26-C-1242

# IN THE UNITED STATES DISTRICT COURT EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Nicholas L. Torresin, Plaintiff, v. Michael A. Dunn, Kerkman & Dunn, Erik H. Monson, Gaynor Law Group LLC, Coyne, Schultz, Becker & Bauer S.C., Andrew G. Frank, Russell J. Karnes, Mallery S.C., Robert B. Corris, Robert B. Corris S.C., Columbia Casualty Company / CNA Insurance, Wisconsin Lawyers Mutual Insurance Company, Terry E. Johnson, Von Briesen & Roper S.C., and John Does 1-10, Defendants. | Case No.: [To Be Assigned] RICO STATEMENT Pursuant to 18 U.S.C. Sections 1961-1968 DOC-057 Subject to Supplementation THE LEGAL COVER-UP ENTERPRISE Distinct from and supplemental to DOC-021 (The Property Fraud Enterprise) |

## PREFATORY NOTE -- TWO SEPARATE RICO ENTERPRISES

This RICO Statement concerns a second and analytically distinct enterprise from the property fraud enterprise described in DOC-021.

That enterprise -- the B-H Group / Jugar LLC network -- committed the underlying property fraud beginning in 2017.

This statement concerns the enterprise that was assembled afterward, specifically to protect the first one.

The Legal Cover-Up Enterprise is composed primarily of attorneys and their insurers. Its members were not the architects of the original fraud. They are the architects of its concealment.

Their predicate acts are not lease fraud and manufactured defaults.

They are obstruction, wire fraud through the court system, extortion, money laundering through settlement proceeds, and coordinated suppression of regulatory complaints.

- 1 -

The victim is the same: Nicholas L. Torresin. The purpose is the same: to ensure he never recovers. The enterprise is different.

**This distinction matters because it creates two independent causes of action, two independent sets of treble damages, and two independent paths to federal jurisdiction -- each standing entirely on its own.**

---

**QUESTION 1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), (c), and/or (d).**

Plaintiff alleges violations of 18 U.S.C. Sections 1962(c) and (d):

- Section 1962(c): Each defendant was employed by or associated with the Legal Cover-Up Enterprise and conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity -- specifically, obstruction, wire fraud, extortion, and coordinated suppression of regulatory and judicial proceedings.

- Section 1962(d): Each defendant participated in a conspiracy to violate Section 1962(c). The coordination among attorneys, their insurers, and their carriers to silence Torresin, suppress regulatory complaints, and exhaust him financially constitutes an ongoing conspiracy with multiple overt acts spanning 2019 through at least 2026.

**QUESTION 2. List each defendant and state the alleged misconduct and basis of liability.**

**[ MICHAEL A. DUNN -- Kerkman & Dunn, Bar No. 1012005 ]**

Primary architect of the cover-up enterprise.

His role is documented and analytically separate from DOC-021.

Two key predicate acts:

(a) December 14, 2020 -- Authored the 'squeeze the insurer' letter.

Explicit documented statement of intent to use financial attrition against Torresin rather than adjudicate on the merits.

Wire fraud and extortion predicate.

(b) February 5, 2024 -- Dual-track maneuver.

Filed SOL motion (Document 11 -- EX-R2-05) in open court.

Simultaneously sent a private letter (EX-R2-04) to Torresin's own attorney Frank at Mallery S.C. -- same day.

Court filing = public instrument. Private letter = coordination mechanism.

Wire fraud predicate.

## [ ERIK H. MONSON -- Gaynor Law Group LLC / Coyne, Schultz, Becker & Bauer S.C., Bar No. 1032463 ]

Co-architect of the cover-up enterprise.

Note: Monson's 2019 predicate acts were committed while at Coyne, Schultz, Becker & Bauer S.C. His 2025 predicate acts were committed while at Gaynor Law Group LLC. Both firms are named as responsible entities for conduct occurring during their respective periods.

October 28, 2019 -- Monson designated Joe Griese of Inter Hold LLC (New Berlin, WI) as an expert witness for defendants.

October 29, 2019 -- Monson transmitted 109 pages of Torresin's federal and state tax returns and IRS-related financial records to Griese by email (EX-R2-01).

Transmitted without court authorization -- in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78.

Both federal and state criminal violations.

Griese conducted his analysis exclusively from information selectively provided by defendants -- an incomplete and curated record that did not reflect Torresin's full financial position.

Griese never contacted Torresin or Torresin's counsel.

August 20, 2025 -- Monson filed a defamatory letter with Judge Gabriele (Document 70 -- EX-R2-13, Case 24CV000092).

Filed on letterhead bearing 'Our File No. 7526/5018.10' -- the same CNA internal claim code appearing on deposition invoices from the first lawsuit five years earlier.

Establishes that Monson was operating under a single CNA administrative infrastructure across both lawsuits -- coordinated, continuous, undisclosed.

The defamatory content of Document 70 is the subject of a separate civil complaint.

## [ ANDREW G. FRANK -- Mallery S.C., Bar No. 1046021 ]

Frank's documented involvement spans intake, disappearance, and reappearance at critical junctures.

(a) Signed Torresin at intake.

Disappeared during representation.

Present again only when institutional cover was needed.

(b) Received Dunn's February 5, 2024 private letter the same day Dunn filed the SOL motion.

His failure to disclose it to his own client is itself a documented overt act in furtherance of the conspiracy.

(c) Formerly at Kerkman & Dunn (May 2017 -- July 2018 -- EX-R2-20) -- same firm as Dunn.

His subsequent appearance as Torresin's intake attorney at Mallery S.C. warrants examination as a conflict of interest.

## [ RUSSELL J. KARNES -- Mallery S.C., Bar No. 1054982 ]

Documented predicate acts:

Case 2:26-cv-01242-BHL    Filed 07/15/26    Page 4 of 24    Document 1

(a) February 12, 2024 -- Signed stipulation dismissing 24CV000092 (EX-R2-06) on behalf of TREI without Frank's involvement.

Full consequences not disclosed to Torresin.

(b) April 25, 2025 -- Received Johnson's threat letter (EX-R2-07, direct extortion instrument).

Concealed from Torresin throughout active settlement negotiations.

(c) May 9, 2025 -- Received verbal threat from Monson by telephone.

Monson warned that BH Group would dissolve under Chapter 128 if Torresin prevailed -- rendering any judgment uncollectible.

Withheld from Torresin.

(d) May 19, 2025 -- Karnes, through paralegal Caroline Tietjens, transmitted the Corris invoices from Johnson's office (EX-R2-08). The April 25 threat letter (EX-R2-07) that accompanied them remained undisclosed.

Selective disclosure documented in writing.

(e) August 27, 2025 -- Delivered settlement package by email (EX-R2-14).

The release was pre-drafted to include an attorney recommendation clause -- embedded directly in Karnes's own signature block -- stating the settlement was entered 'upon the advice and recommendation of myself as attorney for the plaintiff.'

The clause was pre-printed before Torresin saw the document.

Had Torresin signed, the clause would have served as Karnes's own defense in any future malpractice proceeding.

The release document itself contained four additional traps:

First -- Global release of every enterprise member. The released parties included B-H Group, Columbia Casualty Company, Continental Casualty Company d/b/a CNA Insurance, and Brian Hervat -- 'along with any related, subsidiary, and/or parent corporations, as well as their successors, employers, employees, agents, insurers,

administrators, executors, attorneys, assigns, and all other persons, entities, or organizations who are or might be liable.' The word 'attorneys' appears in that list. Dunn. Monson. Every attorney connected to every released party. All of them -- walking free under one signature.

Second -- Total regulatory kill switch. Section 5 required Torresin to withdraw DSPS Case No. 22 REB 119 in writing and to 'refrain from making, filing or voluntarily participating in any action, lawsuit, proceeding, claim, charge, or complaint arising in whole or in part out of the Released Claims...with any local, state, or federal agency, self-regulatory organization, administrative agency, arbitration forum, court, or licensing entity / authority.' Every agency. Every forum. Every court. Every complaint. OLR. SCR. DSPS. All of it -- contractually dead. Simultaneously.

Third -- Self-reliance trap embedded in the body. Section 3 states: 'Releasor acknowledges that he is represented by counsel and has had the opportunity to discuss this Release with counsel.' Karnes built his own future defense into the document body -- not just the signature block. Two layers of self-protection in a document handed to his own client.

Fourth -- The actual payment was not $100,000 cash. It was $100,000 from CNA plus $10,000 from BH Group by August 5, 2026 plus $10,000 from BH Group by August 5, 2027. Total: $120,000 -- paid in installments -- for the release of every claim against every defendant in both enterprises. Torresin paid Corris alone approximately $120,000 in legal fees during the period of compromised representation.

Monson was holding the $100,000 CNA check and was the central coordinator of this package. Karnes served as the delivery mechanism. Frank is absent from the entire package and email chain.

Torresin read the documents, recognized the trap, and terminated the representation. Karnes himself said: 'Sounds like you are firing me.'

Package rejected.

Case 2:26-cv-01242-BHL    Filed 07/15/26    Page 6 of 24    Document 1

Additional Karnes-Monson communications from August 2025 are preserved and will be addressed in a supplemental submission.

## [ ROBERT B. CORRIS -- Bar No. 1013438 ]

Corris's role in the cover-up enterprise preceded Karnes and Frank and set the template for what followed.

Retained by Torresin in 18CV000899, Corris became the first attorney captured by the enterprise's leverage mechanism.

Specifically: Dunn's September 2019 sanctions motion (EX-R2-19) named Corris personally as a respondent -- creating a direct conflict between Corris's professional self-interest and his client's interests.

The consequence was immediate and documented.

> November 30, 2019 -- Following a private meeting (EX-R2-17) between Corris and opposing counsel Dunn and Monson -- from which Torresin was excluded --
>
> Corris emerged and recommended dropping the conspiracy and aiding and abetting claims.
>
> This eliminated the most powerful counts in the complaint.
>
> Torresin objected. Corris prevailed.

The full mechanics of this capture are detailed in the Billing Cartel section.

Torresin paid approximately $120,000 in fees to Corris during the period of compromised representation.

Only approximately $86,000 is reflected in Corris's produced billing records (EX-R2-15 / EX-R2-16).

Full accounting subject to review of the complete client file currently held at Mallery S.C.

## [ ROBERT B. CORRIS S.C. ]

The professional corporation through which Corris conducted his representation of Torresin. All predicate acts attributed to Corris were conducted in the course and scope of Robert B. Corris S.C.

## [ WISCONSIN LAWYERS MUTUAL INSURANCE COMPANY (WILMIC) ]

WILMIC is the malpractice insurer for Attorney Robert B. Corris -- confirmed.

WILMIC deployed Von Briesen & Roper S.C. and Johnson as instruments of financial pressure against Torresin to extinguish Corris's malpractice exposure.

> WILMIC's coverage of additional defendants in this matter -- including but not limited to Dunn, Monson, Frank, and Karnes -- has not been disclosed.

> If WILMIC is funding the defense of multiple attorneys whose conduct constitutes predicate acts of the cover-up enterprise, and if WILMIC's claims handling includes coordination with covered attorneys to structure settlements designed to silence the claimant, WILMIC becomes a participant in the enterprise rather than a passive insurer.

Plaintiff confirms WILMIC's coverage of Corris and reserves the right to supplement this statement upon discovery of WILMIC's coverage of additional defendants.

## [ COLUMBIA CASUALTY COMPANY / CNA INSURANCE (Continental Casualty Company) ]

CNA funded the opposing defense in both 18CV000899 and 24CV000092 under a single claim number (REA04983 / DISP-18016337 / internal code 5018.10) without disclosure to the adverse party.

Three documented predicate acts:

(a) Undisclosed adverse funding -- denied Torresin the ability to identify the true financial backer, challenge the insurance arrangement in discovery, or seek independent counsel regarding the conflict.

(b) The 5018.10 code appears on deposition invoices from 2020-2022 (EX-R2-12) AND on Monson's 2025 letterhead (EX-R2-13).

Establishes a single CNA administrative infrastructure across both lawsuits spanning at least five years.

(c) March 19, 2024 -- Kevin Apple (CNA coverage counsel) denied both indemnity coverage AND a defense attorney for Hervat for intentional acts (EX-R2-11).

August 8, 2025 -- seventeen months later -- CNA issued a $100,000 check (No. 110645219) under the same policy.

Conditioned on withdrawal of DSPS Case No. 22 REB 119.

Unexplained reversal conditioned on silencing an independent regulatory proceeding. Extortion predicate.

(d) Changed its name mid-litigation -- Continental Casualty Company to CNA doing business as Continental Casualty Company -- without disclosure.

Obscured continuity of involvement across both lawsuits.

## [ TERRY E. JOHNSON -- Von Briesen & Roper S.C. ]

April 25, 2025 -- Johnson sent threat letter to Karnes at Mallery S.C. -- not to Torresin directly.

Three elements:

(a) Threatened an unspecified fee counterclaim based on the enclosed Corris billing records (CORRIS-1 through CORRIS-0025) if Torresin continued pursuing regulatory complaints against Corris (EX-R2-07).

(b) Offered to drop the threat if Torresin stopped.

Classic extortion structure. Hobbs Act (18 U.S.C. Section 1951) and Wis. Stat. Section 943.30.

(c) Routed through Torresin's own attorney rather than delivered directly to Torresin.

Karnes concealed the letter for approximately four months.

## [ VON BRIESEN & ROPER S.C. ]

The law firm through which Johnson conducted the extortion predicate act. All conduct attributed to Johnson was conducted in the course and scope of Von Briesen & Roper S.C.

## [ JOHN DOES 1-10 ]

Identities to be confirmed through discovery. Placeholder defendants consistent with the enterprise's documented scope.

## THE BILLING CARTEL -- COORDINATED SUPPRESSION THROUGH INSIDE CAPTURE

1. In September 2019, Attorney Michael Dunn of Kerkman & Dunn filed a sanctions motion (EX-R2-19) in Case No. 18CV000899 naming Attorney Robert Corris personally as a respondent.

This act was not routine litigation conduct.

By naming Corris personally, Dunn created a mechanism by which Corris acquired a direct personal stake in the same proceeding in which he was ostensibly representing Nicholas Torresin.

From that moment forward, Corris's bar license, personal liability, and professional reputation were directly imperiled by the same litigation he was conducting on Torresin's behalf.

The predictable and documented consequence was an incentive inversion: the outcome that best served Corris was no longer a decisive victory for his client -- but rather a managed continuation of the litigation, sustained billing activity, and a posture of accommodation toward Dunn calculated to preserve Corris's own professional standing.

Dunn's sanctions motion operated as a leash. Corris never escaped it.

From that point forward, the most efficient outcome for Corris was a slow and controlled dissipation of Torresin's claims rather than their vigorous prosecution.

2. The incentive inversion produced its first documented act within weeks.

November 30, 2019 (EX-R2-17) -- Following depositions conducted at Corris's conference room, Torresin and his witness Pilmaier were put in the hallway.

Corris, Dunn, and Monson -- plaintiff's counsel and both adverse parties' counsel -- remained behind in a private meeting from which Torresin was excluded.

Approximately five to ten minutes later, Corris emerged and advised Torresin that the conspiracy and aiding and abetting claims should be dropped and the complaint amended to tortious interference.

The stated rationale: Bergquist had testified he was unaware of Hervat's conduct, making conspiracy difficult to prove.

What Corris did not disclose was that he himself had documented the undisclosed family relationship between Bergquist and Hervat four months earlier.

In his own July 11, 2019 letter to Dunn (EX-R2-02) -- Interrogatory No. 4 -- Corris demanded discovery into that family relationship.

Corris held the proof that made the conspiracy claim viable.

He recommended abandoning it anyway.

Torresin objected. Corris, his own attorney, persuaded him to defer.

The private meeting between Corris, Dunn, and Monson -- from which Torresin was excluded -- followed within minutes by Corris's recommendation to eliminate the claims most damaging to Dunn, constitutes a documented overt act of coordination between plaintiff's counsel and adverse counsel conducted outside the client's presence and without the client's consent.

Attorney Jason R. Pilmaier (Bar No. 1070638, Howard, Solochek & Weber S.C.) -- present in the hallway throughout (EX-R2-18) -- is an available witness to Torresin's exclusion from that meeting.

The eliminated claims were the most powerful counts available to Torresin.

They were also the counts that would most directly have exposed Dunn to liability.

The timing -- weeks following the filing of the sanctions motion against Corris personally -- and the private meeting that produced the recommendation are not coincidental.

They are the operational signature of the capture mechanism Dunn's motion created.

3. The pattern that emerged from Corris's capture was then replicated, in substance and effect, by each subsequent attorney retained by Torresin.

Attorney Frank suppressed federal remedies and steered away from escalation.

Karnes went further -- presenting Torresin with a pre-dated DSPS withdrawal letter as part of the August 27, 2025 settlement package without prior discussion or client consent.

Three skilled legal specialists, retained sequentially and independently by the same client, arrived at substantively identical wrong conclusions with respect to the same set of facts and the same institutional adversary.

All three were billing Torresin actively throughout the period of their representation.

All three were connected, directly or indirectly, to the same carrier's counsel -- specifically, Wisconsin Lawyers Mutual Insurance Company (WILMIC), through Terry Johnson at Von

Briesen.

The statistical improbability that three independent specialists would arrive at the same wrong answer for the same client on the same facts while all billing that client and all connected to the same insurance infrastructure compels a conclusion other than coincidence.

Under 18 U.S.C. Section 1962(c), the pattern of identical suppressive conduct across three attorneys operating within the same carrier-connected network satisfies the pattern of racketeering activity element and constitutes the organizational signature of a coordinated enterprise.

4. Erik Monson served as co-counsel for B-H Group alongside Dunn in the underlying eviction proceedings, forming part of the original adverse institutional infrastructure arrayed against Torresin.

When Monson later executed the February 12, 2024 stipulation dismissing Case No. 24CV000092 on behalf of B-H Group -- on the same calendar day that Karnes executed the same stipulation on behalf of Torresin -- the coordinated same-day execution of a dismissal instrument by attorneys nominally on opposing sides of an active case constitutes a documented overt act in furtherance of the enterprise.

This coordination is further corroborated by documentary evidence establishing a unified administrative infrastructure: Monson's file number 7526/5018.10, as appearing on his 2025 letterhead, corresponds to the CNA internal claim code present on deposition invoices from 2020 through 2022, establishing that Monson operated under a single CNA administrative umbrella across both lawsuits and throughout the period of alleged suppression.

5. Each attorney identified herein -- Dunn, Corris, Karnes, Frank, and Monson -- conducted or participated in the affairs of the Legal Cover-Up Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. Section 1962(c).

The predicate acts include wire fraud under 18 U.S.C. Section 1343, predicated upon fee billing communications, suppressive legal advice, and settlement correspondence transmitted electronically across state lines.

And mail fraud under 18 U.S.C. Section 1341, predicated upon written correspondence concerning settlement, DSPS withdrawal, and regulatory suppression transmitted through the United States mails.

Each billing communication transmitted electronically in furtherance of a representation infected by the capture mechanism described herein constitutes a discrete and independently chargeable predicate act.

The aggregation of those acts across the attorneys identified herein, over a period spanning September 2019 through at least February 2024, constitutes a pattern of racketeering activity satisfying the continuity and relationship requirements established in H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989).

6. The identical-advice pattern across three attorneys connected to the same carrier infrastructure further constitutes conspiracy to violate 18 U.S.C. Section 1962(c) within the meaning of Section 1962(d).

It is not necessary under Section 1962(d) to prove that each conspirator personally committed a predicate act.

It is sufficient to establish that each agreed to facilitate a pattern of racketeering conducted by the enterprise.

Salinas v. United States, 522 U.S. 52, 63-65 (1997).

The sequential replication of the same suppressive strategy -- suppress federal remedies, avoid escalation, and in Karnes's case, the unilateral presentation of a pre-dated DSPS withdrawal -- by each attorney introduced into Torresin's representation constitutes circumstantial evidence of an agreement, explicit or tacit, to accomplish through

Case 2:26-cv-01242-BHL    Filed 07/15/26    Page 14 of 24    Document 1

coordinated legal malpractice what could not lawfully be accomplished through direct obstruction:

The permanent suppression of Torresin's meritorious claims and the protection of CNA/Columbia Casualty's financial exposure.

**QUESTION 3. List the alleged wrongdoers, other than the defendants, and state the misconduct of each.**

**JOE GRIESE -- Inter Hold LLC, New Berlin, WI**

Designated as expert witness for defendants on October 28, 2019.

Received 109 pages of Torresin's federal and state tax returns and IRS-related financial records from Monson the following day -- in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78.

Conducted his analysis exclusively from information selectively provided by defendants -- never contacting Torresin or Torresin's counsel.

**STEPHANIE DYKEMAN -- Litchfield Cavo LLP, Bar No. 1035857**

**CNA's defense counsel who entered the case April 21, 2025 -- during the most consequential phase of the litigation, overlapping with predecessor Erica Hammett (August 26, 2024 -- May 2, 2025).**

**Dykeman was present as CNA's instrument during the period when the coercive settlement package was structured and delivered.**

**Her specific knowledge of and participation in the settlement structure is a gap to be confirmed through document production.**

**ERICA HAMMETT -- CNA Defense Counsel**

**Predecessor to Dykeman. Appeared as CNA defense counsel August 26, 2024 through May 2, 2025. Overlapped with Dykeman's entry by approximately ten days.**

**Her specific conduct during her tenure requires review of court filings from that period.**

**QUESTION 4. List the alleged victims and state how each was allegedly injured.**

**NICHOLAS L. TORRESIN**

The sole victim of the cover-up enterprise. Distinct from but compounding the injuries documented in DOC-021, the cover-up enterprise caused the following independent injuries:

- Paid approximately $120,000 in fees to Corris (approximately $86,000 reflected in produced billing records) while the conspiracy claim was suppressed and the case was allowed to deteriorate.

- Paid approximately $22,000 to Mallery S.C. (Karnes/Frank) while Karnes concealed the Johnson threat letter and ultimately presented a settlement document pre-drafted to protect Karnes from malpractice.

- Deprived of the ability to pursue regulatory complaints by the non-participation clause in the voided settlement document -- had he signed, all OLR filings and all SCR complaints would have been contractually barred.

- Subject to financial extortion through the Johnson threat letter -- unspecified fee counterclaim threatened to silence regulatory complaints against Corris. Caused delay and deterrence.

- Deprived of the $100,000 CNA settlement check by refusing to withdraw DSPS Case No. 22 REB 119 -- the condition imposed by the cover-up enterprise to purchase his silence.

Total additional compensatory damages attributable to the cover-up enterprise (independent of DOC-021 damages): approximately $142,000 in attorney fees paid to enterprise participants, plus the $100,000 coerced settlement conditioned on regulatory silence, plus ongoing financial and reputational harm. Trebled under 18 U.S.C. Section 1964(c).

**QUESTION 5. Describe in detail the pattern of racketeering activity.**

**5(a) -- Predicate Acts and Statutes Violated**

| Act | Statute | Description |
| --- | --- | --- |

| | | |
|---|---|---|
| Wire Fraud | 18 U.S.C. Section 1343 | Dunn's Feb 5, 2024 private letter to Frank -- same day as court filing; Monson's Oct 29, 2019 email transmitting 109 pages of Torresin's financial records to undisclosed consultant Griese; all electronic coordination among enterprise members using interstate wire networks. |
| Obstruction of Justice | 18 U.S.C. Section 1503 | Monson's false sworn pretrial report and false affidavit; suppression of conspiracy claim by Corris under pressure November 30, 2019; Karnes's concealment of Johnson threat letter for four months. |
| Extortion / Hobbs Act | 18 U.S.C. Section 1951 Wis. Stat. Section 943.30 | Johnson threat letter (April 25, 2025) threatening unspecified fee counterclaim to suppress regulatory complaints; CNA settlement condition requiring DSPS withdrawal in exchange for $100,000 payment. |
| Mail / Wire Fraud -- Court Filings | 18 U.S.C. Sections 1341, 1343 | False affidavit filed by Monson; false pretrial report; Document 70 containing defamatory statements filed with the court via electronic filing system -- each filing a use of wires in furtherance of the scheme. |
| Money Laundering | 18 U.S.C. Section 1956 | The $100,000 CNA check -- issued after a prior denial of coverage for intentional acts, conditioned on regulatory silence -- constitutes a financial transaction designed to suppress a government proceeding. The attorney fees paid to Corris ($120,000) and Karnes/Frank ($22,000) while those attorneys were participating in the cover-up enterprise constitute proceeds of the enterprise's unlawful activity. |

### 5(b) -- Chronological Predicate Acts

October 28-29, 2019: Monson designates Joe Griese (Inter Hold LLC, New Berlin, WI) as expert witness for defendants on October 28, then transmits 109 pages of Torresin's federal and state tax returns and IRS-related financial records to Griese by email on October 29 -- without court authorization, in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78. Wire fraud and federal criminal violation predicate. Records selectively curated -- incomplete and one-sided.

July 11, 2019: Corris sends letter to Dunn (EX-R2-02) demanding discovery into the family relationship between Kenneth Bergquist and Brian Hervat -- Bergquist was Hervat's stepfather. Corris documented the undisclosed family connection that gave the conspiracy claim its strongest factual foundation. This letter is the proof that Corris knew -- and later abandoned -- the most powerful count available to Torresin.

September 23, 2019: Dunn files sanctions motion in 18CV000899 naming Corris personally as respondent -- six weeks after Corris's July 11 letter demanding discovery into the Bergquist-Hervat family relationship. The sanctions motion created a direct conflict between Corris's personal professional exposure and his client's litigation interests. Obstruction / capture mechanism predicate.

November 30, 2019: Corris drops the conspiracy claim in 18CV000899 -- the claim he had the documentary foundation to prove as of July 11, 2019. The three-step chain: July 11 (Corris documents the family relationship) -- September 23 (Dunn sanctions Corris personally) -- November 30 (conspiracy claim abandoned). Eliminates the most powerful count in the complaint. Wire fraud / obstruction predicate -- deliberate suppression of Torresin's most viable legal theory.

December 14, 2020: Dunn authors the 'squeeze the insurer' letter -- explicit documented statement of intent to use financial attrition against Torresin rather than adjudicate on the merits. Wire fraud / extortion predicate.

February 5, 2024: Dual-track maneuver: Dunn files SOL motion (Document 11) in open court AND sends private letter to Frank at Mallery S.C. -- same day. Court filing is the public instrument. Private letter to Torresin's own attorney is the coordination mechanism. Wire fraud predicate -- interstate electronic communication in furtherance of the scheme.

February 12, 2024: Karnes signs stipulation dismissing 24CV000092 on behalf of TREI (Document 14). Frank absent. Monson signs for B-H Group. Judge Gagliardi enters dismissal same day. Coordinated same-day execution -- obstruction predicate.

April 25, 2025: Johnson (Von Briesen & Roper S.C.) sends threat letter directly to Karnes at Mallery S.C. Threatens unspecified fee counterclaim to suppress Torresin's regulatory complaints against Corris. Routed through Torresin's own attorney rather than delivered directly to Torresin. Extortion predicate -- Hobbs Act / Wis. Stat. Section 943.30.

May 19, 2025: Karnes, through paralegal Caroline Tietjens, transmits the Corris invoices received from Johnson's office (Von Briesen & Roper S.C.). The April 25,

2025 Johnson threat letter that accompanied them remained undisclosed. Selective disclosure documented in writing -- Karnes directing transmission of billing paperwork while the extortion instrument remained undisclosed. Wire fraud / obstruction predicate.

August 8, 2025: CNA issues $100,000 check (No. 110645219) -- conditioned on withdrawal of DSPS Case No. 22 REB 119. Previously denied both indemnity and a defense attorney for Hervat for intentional acts (March 19, 2024). Unexplained reversal seventeen months later conditioned on silencing an independent regulatory proceeding. Extortion / money laundering predicate.

August 20, 2025: Monson files Document 70 with Judge Gabriele -- letter bearing 'Our File No. 7526/5018.10' on letterhead. Same CNA internal code from 2020-2022 invoices. Establishes single CNA administrative infrastructure across both lawsuits spanning five-plus years. Wire fraud / false filing predicate.

August 27, 2025: Karnes delivers settlement package to Torresin by email. Release pre-drafted with embedded attorney recommendation clause in Karnes's own signature block -- 'upon the advice and recommendation of myself as attorney for the plaintiff.' Global release naming B-H Group, CNA, Continental Casualty, and Brian Hervat 'along with...attorneys, assigns, and all other persons, entities, or organizations who are or might be liable' -- every defendant in both enterprises released under one signature. Section 5 required withdrawal of DSPS Case No. 22 REB 119 and barred Torresin from 'making, filing or voluntarily participating in any action, lawsuit, proceeding, claim, charge, or complaint...with any local, state, or federal agency, self-regulatory organization, administrative agency, arbitration forum, court, or licensing entity / authority.' Every forum. Every agency. Every complaint. Simultaneously extinguished. Total consideration: $100,000 from CNA plus $10,000 from BH Group by August 2026 plus $10,000 from BH Group by August 2027 -- $120,000 in installments for a global release of both enterprises. Torresin paid Corris approximately $120,000 alone during compromised representation. Wire fraud / obstruction / extortion predicate. Torresin reads the documents, fires Karnes same day. Package rejected. DSPS Case No. 22 REB 119 remains active.

**5(c) -- Wire Fraud Particularity (Fed. R. Civ. P. 9(b))**

Wire Fraud Act No. 1: October 29, 2019 -- Email, Monson to Griese (joegriese@wi.rr.com) -- sent via electronic mail -- content: 109 pages of Torresin's federal and state tax returns and IRS-related financial records, selectively curated by defendants -- transmitted without court authorization in violation of 26 U.S.C. Section 6103 and Wis. Stat. Section 71.78 -- federal and state criminal violations constituting independent predicate acts.

Wire Fraud Act No. 2: December 14, 2020 -- Letter/wire, Dunn -- 'squeeze the insurer' -- interstate wire -- content: explicit statement that the enterprise's strategy was financial attrition rather than adjudication -- purpose: to coordinate the cover-up enterprise's litigation strategy.

Wire Fraud Act No. 3: February 5, 2024 -- Email/letter, Dunn to Frank at Mallery S.C. -- sent same day as Document 11 court filing -- content: private coordination with Torresin's own attorney on the same day a court motion was filed -- purpose: dual-track coordination between opposing counsel and plaintiff's counsel using interstate wire.

Wire Fraud Act No. 4: April 25, 2025 -- Email, Johnson (Von Briesen) to Karnes (Mallery S.C.) -- sent via electronic mail -- content: threat of unspecified fee counterclaim conditioned on Torresin dropping regulatory complaints -- purpose: financial coercion routed through Torresin's own attorney to suppress complaints against enterprise participants.

**QUESTION 6. Describe in detail the alleged enterprise.**

**6(a) -- Members of the Enterprise**

The Legal Cover-Up Enterprise consists of: Michael A. Dunn (Kerkman & Dunn); Erik H. Monson (Gaynor Law Group LLC); Andrew G. Frank (Mallery S.C.); Russell J. Karnes (Mallery S.C.); Robert B. Corris (Robert B. Corris S.C.); Columbia Casualty Company / CNA Insurance; Wisconsin Lawyers Mutual Insurance Company (to be confirmed); Terry E. Johnson (Von Briesen & Roper S.C.); with associated participation by Joe Griese

(undisclosed financial consultant), Stephanie Dykeman (Litchfield Cavo LLP), and Erica Hammett (CNA defense counsel).

### 6(b) -- Structure, Purpose, and Course of Conduct

The enterprise is a legal and insurance infrastructure assembled for a single purpose: to prevent Nicholas L. Torresin from obtaining any recovery -- judicial, regulatory, or financial -- from the original property fraud.

Its structure is layered: attorneys serve as the active participants, their insurers serve as the financial infrastructure, and the tools of concealment are the judicial and regulatory systems themselves.

The enterprise operates through three coordinated mechanisms:

> Mechanism 1 -- Litigation Attrition: Deploy financial exhaustion tactics (Dunn's 'squeeze the insurer' strategy; sanctions motions; prolonged discovery) to force Torresin to sell assets to fund his defense, reducing his resources until he cannot continue.

> Mechanism 2 -- Inside Capture: Place Torresin's own attorneys (Corris, Frank, Karnes) in positions where they advance the enterprise's interests rather than Torresin's -- dropping conspiracy claims, concealing threat letters, recommending settlements that protect the attorneys rather than the client.

> Mechanism 3 -- Regulatory Suppression: Use financial coercion (Johnson threat letter), settlement conditions (DSPS withdrawal required), and broad non-participation clauses to silence Torresin's regulatory complaints across all forums -- OLR, SCR, DSPS -- simultaneously.

### 6(c) -- What Makes This Enterprise Distinct from DOC-021

The Property Fraud Enterprise (DOC-021) acquired Torresin's property and stripped its equity. That enterprise's primary participants are Hervat, B-H Group, Jugar LLC, and Bergquist -- real estate operators.

The Legal Cover-Up Enterprise has no real estate operators.

Its participants are exclusively attorneys, insurers, and their agents.

Its predicate acts are not lease fraud and manufactured defaults -- they are obstruction, wire fraud through court filings, extortion through threat letters, and coordinated regulatory suppression.

The two enterprises share only one thing: their victim.

**QUESTION 15/17. Describe the alleged injury and damages.**

The cover-up enterprise caused the following documented injuries, independent of and in addition to the DOC-021 property fraud damages:

| Category | Amount | Source |
| --- | --- | --- |
| Attorney fees -- Corris | ~$120,000 | Paid while Corris suppressed conspiracy claim and allowed case to deteriorate |
| Attorney fees -- Karnes/Frank (Mallery S.C.) | ~$22,000 | Paid while Karnes concealed threat letter and prepared self-serving settlement |
| Coerced settlement -- refused | $100,000 | CNA check conditioned on DSPS withdrawal -- refused; Torresin lost access to this payment due to enterprise's coercive condition |
| Extortion threat -- Johnson | Unspecified (threatened) | Fee counterclaim threat used to suppress regulatory complaints; caused delay and deterrence |
| **TOTAL COMPENSATORY** | **~$242,000+** | **Before trebling under 18 U.S.C. Section 1964(c)** |
| **TREBLED DAMAGES** | **~$726,000+** | **Plus attorney's fees and costs under Section 1964(c)** |

**QUESTION 20. Additional information material to understanding this RICO claim.**

(1) The two RICO enterprises are cumulative, not alternative.

DOC-021 and DOC-057 are not competing theories.

They are sequential enterprises with a causal relationship: the cover-up enterprise exists because the property fraud enterprise needed protection.

A federal court can adjudicate both. The damages are independent and cumulative.

- 22 -

Combined trebled damages from both enterprises: approximately $4.3M--$4.35M (DOC-021) plus approximately $726,000+ (DOC-057) = approximately $5.0M--$5.1M, plus attorney's fees and costs.

(2) The cover-up enterprise is still active.

The OCI complaint (DOC-042 -- EX-R2-25) was filed June 26, 2026.

The OLR complaint against Frank (DOC-045 -- EX-R2-26) was filed June 26, 2026.

An OLR complaint against Robert B. Corris (DOC-018) was filed July 9, 2026 -- now a permanent record with the Office of Lawyer Regulation.

DSPS Case No. 22 REB 119 (EX-R2-24) remains active.

The enterprise's regulatory suppression objective has not succeeded.

The enterprise's members remain in active legal practice and continue to pose a risk to other clients.

**(3) The inside capture mechanism is the most significant element of this enterprise.**

**It is one thing for opposing counsel to use aggressive litigation tactics.**

**It is another for a plaintiff's own attorneys to suppress the plaintiff's strongest claims, conceal threat letters, and recommend settlements that protect the attorney from the client's future malpractice claims.**

**That is not zealous advocacy gone wrong.**

**That is a coordinated enterprise operating from inside the attorney-client relationship.**

(4) The 5018.10 code is the thread that connects the two enterprises.

CNA's internal claim code appears on deposition invoices from the first lawsuit (2020-2022) and on Monson's letterhead in the second lawsuit (2025).

That code is not a court number or a public identifier.

It is CNA's own internal reference -- meaning CNA administered both lawsuits under a single claim infrastructure for at least five years.

This establishes the continuity element of the RICO pattern and links CNA directly to the cover-up enterprise across both proceedings.

---

**CONCLUSION**

The Legal Cover-Up Enterprise is a documented, ongoing criminal conspiracy operating through the attorney-client relationship and the insurance system.

Its members used the tools of the legal profession -- court filings, settlement documents, threat letters, and insurance claims handling -- as instruments of obstruction, extortion, and regulatory suppression.

The predicate acts are enumerated with particularity.

The pattern spans 2019 through at least 2026.

The enterprise is distinct from the DOC-021 property fraud enterprise.

The damages are independent and cumulative.

Plaintiff respectfully submits that the facts of this case satisfy all elements of a federal civil RICO claim under 18 U.S.C. Sections 1962(c) and (d) as to the Legal Cover-Up Enterprise, independent of and in addition to the claims set forth in DOC-021.

Respectfully submitted,

*Nicholas L. Torresin*

Nicholas L. Torresin

304 18th Ave #5, Union Grove, WI 53182

July 15, 2026

262 - 287 - 3221